UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Petitioner, | )<br>)<br>) |
| v. | ) CIVIL NO. |
| | ) |
| $89,985.00 US CURRENCY,<br>more or less; | )<br>)<br>)  **EP10CV0157** |
| and | )<br>) |
| 2001 ISUZU RODEO, bearing<br>VIN# 4S2DM58W214348070<br>   Respondent. | )<br>)<br>)<br>) |

## VERIFIED COMPLAINT FOR FORFEITURE

Comes now Petitioner United States of America, acting by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, pursuant to Title 28 U.S.C. Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and respectfully states as follows:

### I.
### JURISDICTION AND VENUE

The Court has original jurisdiction of all civil actions, suits or proceedings commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court has *in rem* jurisdiction over the Respondent Property under 28 U.S.C. §§1355(b) and 1395(a). Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

The Respondent Property was seized on September 23, 2009, by the United States Customs and Border Protection. The Respondent Property has remained in the custody of the Department of

Homeland Security, Immigration and Customs Enforcement, within the jurisdiction of the United States District Court, Western District of Texas, El Paso Division, and shall remain within the jurisdiction of the court pending litigation of this case.

## II.
## DESCRIPTION OF RESPONDENT PROPERTY

The Respondent Property is described as $89,985.00 in United States Currency, more or less and a 2001 Isuzu Rodeo, bearing Texas license plate TWV299 and VIN# 4S2DM58W214348070.

## III.
## VIOLATIONS

This is a civil forfeiture action *in rem* brought for violations of Title 31 U.S.C. §§ 5332 and 5316 and subject to forfeiture to the United States of America pursuant to Title 31 U.S.C. § 5332(c)(1) and 5317( c)(2) which states:

**§ 5332(c)(1) Civil Forfeiture**
**(c)(1) Any property involved in a violation of subsections (a), or a conspiracy to commit such violation, and any property traceable to such violation or conspiracy, may be seized and forfeited to the United States.**

**§ 5317(c)(2) Civil Forfeiture**
**(c)(2) Any property involved in a violation of section 5313, 5316, 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeiture in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.**

## IV.
## BURDEN OF PROOF

At trial, the United States of America will establish by a preponderance of the evidence that the Respondent Property is subject to forfeiture and should be forfeited to the United States of America as alleged by the Verified Complaint for Forfeiture.

## V.
## FACTS IN SUPPORT OF VIOLATIONS

On September 23, 2009, at approximately 1045 hours, Customs and Border Protection Officers assigned to the Anti-terrorist Contraband Enforcement Team (A-TCET) were conducting outbound inspections at the Ysleta Port of Entry in El Paso, which is within the Western District of Texas. During operations, officers encountered Juan Francisco MUNOZ-Morales, who was the driver and sole occupant of a 2001, blue, Isuzu Rodeo bearing Texas plates (TWV 299) arriving at the southbound lanes. Further inspection of the vehicle revealed six black taped bundles containing $89,985.00 in undeclared U.S. Currency concealed in a non-factory built compartment within the manifold of the vehicle. The $89,985.00 in United States currency and the 2001 Isuzu Rodeo were seized for violations of United States Code Title 31 USC 5332, Bulk Cash Smuggling.

### DETAILS OF THE SEIZURE

On September 23, 2009, at approximately 1045 hours, Customs and Border Protection Officers assigned to the Anti-terrorist Contraband Enforcement Team (A-TCET) were conducting outbound inspections at the Ysleta Port of Entry in El Paso, Texas. During operations, officers encountered a 2001, blue, Isuzu Rodeo bearing Texas plates (TWV 299) arriving at the southbound lanes. The driver and sole occupant of the vehicle, Juan Francisco MUNOZ-Morales, a Legally Admitted Permanent Resident, was stopped for questioning.

During questioning, Customs and Border Protection Officer (CBPO) Rodriguez explained to MUNOZ the Cust0ms laws and regulations concerning the exportation of monetary instruments in excess of $10,000.00, and the reporting requirements for currency, weapons, ammunition, and merchandise going into Mexico. MUNOZ stated he understood the laws and the reporting requirements and answered with a negative Customs declaration. CBPO Rodriguez questioned

MUNOZ as to the purpose of his trip and MUNOZ stated he was going to the pharmacy to buy medications and to take a quilt to his grandmother. CBPO Rodriguez asked how much money he had, MUNOZ stated he had about $300.00. CBPO Rodriguez asked MUNOZ how much the medication costs and MUNOZ stated he pays $60.00 for one and $50.00 for the other one. CBPO Rodriguez asked MUNOZ to count all of his money and MUNOZ counted $244.00.

At this time, CBPO Rodriguez asked MUNOZ to turn off the ignition to further inspect the vehicle. CBPO Rodriguez asked MUNOZ if he was the owner of the vehicle and MUNOZ answered "yes" and claimed owning it for about one year. MUNOZ stated he had owned the vehicle for as long as he had lived in El Paso. CBPO Rodriguez asked MUNOZ where he lived before El Paso. MUNOZ stated he lived in Las Vegas, Nevada, prior to moving to El Paso. CBPO Rodriguez noticed the vehicle had a Potter County registration sticker. When asked where Potter County was, MUNOZ stated it was in Amarillo, Texas, and that he had lived there for six months before he moved to El Paso. CBPO Rodriguez asked MUNOZ if he had any repairs done to the vehicle and MUNOZ answered "no". CBPO Rodriguez asked MUNOZ when he last changed the oil, and MUNOZ replied "I cannot remember". CBPO Rodriguez then asked if he had ever changed the oil on the vehicle at all, and MUNOZ, appearing at a loss for an answer, shook his head as if he had not changed the oil. MUNOZ appeared to have difficulty answering questions. CBPO Rodriguez asked MUNOZ if anyone else drove his vehicle and MUNOZ answered "no".

During the time CBPO Rodriguez was questioning MUNOZ, CBP Canine Enforcement Officer (CEO) Pineda heard MUNOZ state that he lived in El Paso and that the vehicle had a Potter County registration sticker. CEO Pineda asked CBPO Rodriguez to have MUNOZ step out of the vehicle so that he may screen the vehicle with his Currency and Firearms Detector Dog (Breck

4

CI-33). Once MUNOZ was out of the vehicle, CEO Pineda performed a systematic search of the vehicle utilizing his K-9 partner "Breck." CEO Pineda .advised officers "Breck." had alerted and responded under the vehicle, on the passenger side, behind the front right tire. As CEO Pineda conducted his search, he noticed water dripping from the sides and rear cargo door, as if the vehicle was just recently washed.

CEO Pineda then called CBPO Quintana and asked her for assistance in searching the engine. CBPO Rodriguez escorted MUNOZ to a designated secondary area. CBPO Quintana noticed tampering and fresh tool marks on the manifold of the vehicle. CBPO Quintana also noticed the vehicle and engine had been freshly washed. At this time, CBPO Quintana approached MUNOZ and asked him if he was the owner of the vehicle to which MUNOZ claimed ownership of the vehicle. MUNOZ claimed to have owned the vehicle for a year and a half. CBPO Quintana asked MUNOZ if he lived in El Paso and MUNOZ stated he had only lived in El Paso for six months. However, MUNOZ explained that he used to live in Las Vegas then he moved to Amarillo and then to El Paso. CBPO Quintana asked MUNOZ if he had any repairs done to the vehicle since he bought it, and MUNOZ stated no, he had not had any repairs done to the vehicle. CBPO Quintana asked MUNOZ if he was the only operator of the vehicle and MUNOZ replied "yes". CBPO Quintana explained to MUNOZ the Customs laws and regulations concerning the exportation of monetary instruments in excess of $10,000.00, and the reporting requirements for currency, weapons, ammunition, and merchandise going into Mexico. MUNOZ stated he understood the laws and the reporting requirements and answered with a negative Customs declaration. MUNOZ was asked how much money he was carrying and he stated he had $200.00. CBPO Quintana asked MUNOZ if he was transporting money for anyone else and MUNOZ responded he was not transporting money for

anyone else. CBPO Quintana asked MUNOZ if he was a courier or if he got hired as a courier to bring monetary instruments of any kind and MUNOZ answered "no" to both questions.

CBPO Rodriguez approached MUNOZ again and asked him what his occupation was. MUNOZ claimed to work as a bass guitarist for a "Nortenio" band. CBPO Rodriguez asked MUNOZ when he last performed. MUNOZ kept searching for an answer and claimed he played about two or three weeks ago, near Chaparral, New Mexico. CBPO Rodriguez learned the other officers were able to find loose screws on the manifold.

At this time, MUNOZ was placed in hand restraints for officer safety and escorted to the CBP head house for a supervisor approved pat down with negative results. CBPO Quintana then drove the vehicle to the CBP dismantling area where it was secured. CBPO Quintana noticed that while driving the vehicle to CBP secondary, the vehicle responded with poor acceleration, indicating signs of a blocked air intake. The manifold cover was removed using tools MUNOZ had in his vehicle.

Further inspection of the vehicle revealed a total of (6) six black taped bundles with an initial count of $89,985.00 in undeclared U.S. Currency, removed from a non-factory compartment located inside the manifold of the vehicle.

Immigration Customs and Enforcement (ICE) Special Agent (SA) Gustavo Correa and United States Border Patrol (USBP) Agent Jesus Morales Jr. informed MUNOZ of his Miranda Warnings which he verbally acknowledged. MUNOZ stated he had questions of his own and for the time being he was willing to talk to investigators.

ICE SA Gustavo Correa and USBP Senior Patrol Agent (SPA) Jesus Morales Jr. conducted an interview of MUNOZ, During the interview, MUNOZ. stated he had owned the vehicle for about one year, and that he was the only one who drove the vehicle. MUNOZ claimed to buying the vehicle

in Amarillo, Texas, and paying $7,000.00 cash for it. MUNOZ could not recall the name of the dealership or location of where he bought the vehicle. MUNOZ stated he had not had any repairs done to the vehicle. Agents asked MUNOZ if he lived in El Paso, and MUNOZ stated he had only lived in El Paso for about seven or eight months. He stated before moving to El Paso, he lived for about one year in Amarillo, Texas, with his aunt, Lupe Munoz. When asked for the address where he lived in Amarillo, MUNOZ could not remember the address. Before moving to Amarillo, MUNOZ lived in Las Vegas, Nevada, for about ten years. MUNOZ stated he worked as a forklift operator in Las Vegas for about nine years for a company named U.S. Food Service. Prior to living in Las Vegas, MUNOZ claims he lived in Riverside, California, for eight years, and prior to that, MUNOZ stated he lived in Mexico.

MUNOZ stated once he moved to Amarillo, he worked full time as a musician and song writer. MUNOZ also stated that since moving to El Paso, he earns a living playing bass guitar and being a back up singer for a band. He usually works two to three times a month on the weekends. MUNOZ claimed the band he plays for usually charges about $500.00 to $800.00 an hour if they are playing "Nortenio" and if they play "Banda" music then they charge about $1,000.00 an hour. MUNOZ stated he gets paid $50.00 an hour and that the band usually plays three or four hours. Agents asked MUNOZ where he played this past weekend and MUNOZ stated he did not play this weekend. Agents asked if he played the weekend before that and MUNOZ stated he did play at a small cook-out somewhere on the eastside of town. Agents then asked MUNOZ for the address where he played and MUNOZ did not know the exact address, all he knew was that it was at a house by Montana and Loop 375. Agents asked MUNOZ if during the time he has been living in El Paso, if he has played at a bigger venue than a backyard, like a dance hall. Agents asked if he had played

at a bigger event such as a wedding quinceanera, bazaar, festival, nightclub, etc., and MUNOZ replied "no." Agents asked MUNOZ what the name of the band was that he played for and he replied "Imperio Surenio." Agents questioned MUNOZ as to the owner or leader of the band and MUNOZ could not recall any contact information other than th leader's first name Mario. MUNOZ did not have an address of phone number, or any way to communicate with his boss.

As to his song writing, agents asked how much MUNOZ charged to write or compose a song for someone, and MUNOZ replied he charged about $2,000.00 to $3,000.00 per song. Agents asked MUNOZ how many times he had been hired to write a song since he had been in El Paso. MUNOZ stated he had not been hired since he lived in Las Vegas. When asked how many songs he wrote for anyone in Las Vegas, MUNOZ could not answer the question. When asked, MUNOZ also stated he did not copyright any of the songs he wrote people. Additionally, MUNOZ stated he payed about $400.00 to $500.00 child support once every two months. MUNOZ stated he payed $650.00 for rent on his apartment, and he payed a monthly electric bill of $50.00.

MUNOZ stated that on today's date, he woke up, went to Fallas Paredes store on Mesa and Texas to have a sensor removed from a comforter he had bought last week which he was now taking to his aunt in Mexico. MUNOZ then went to put gas in his vehicle and then took his vehicle to get a car wash. When asked if he knew why he was being detained, MUNOZ stated that was what he wanted to know for himself. When agents advised him there was currency hidden inside the vehicle, MUNOZ stated he wanted to speak to an attorney. At this time, all questioning ceased.

## VI.
## **PRAYER**

That by virtue of the facts and circumstances supporting the seizure and forfeiture of the Respondent Property, as contained in the aforementioned actions, uses, and premises and/or intended actions, uses, and premises, the Respondent Property is in violation of Title 31 U.S.C. §§ 5332 and 5316 and subject to forfeiture to the United States of America pursuant to Title 31 U.S.C. §§ 5332(c)(1) and 5317(c)(2).

WHEREFORE, Petitioner, United States of America, prays as follows:

1. That public notice shall be issued through an official Internet government forfeiture site for at least thirty (30) consecutive days, pursuant to Rule G(4)(a)(iv)(c), Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions. Any person claiming a legal interest in the Respondent Property must file a Verified Claim with the court within **sixty (60)** days from the first day of publication of this Notice and an Answer within **twenty-one (21)** days thereafter. Title 18, Untied States Code, Section 983(h)(1) permits a court to impose a civil fine on anyone asserting an interest in property that the court determines is frivolous. The Verified Claim and Answer must be filed with the Clerk of the United States District Court, 511 E. San Antonio, El Paso, Texas 79901, and copies of each served upon Assistant United States Attorney David R. Rosado, 700 E. San Antonio, Suite 200, El Paso, Texas 79901, or default and forfeiture will be ordered. *See* 18 U.S.C. § 983(a)(4)(A) and Rule G(5) of the Supplemental Rules of Admiralty or Maritime Claim and Asset Forfeiture Actions.

2. That notice to known potential claimants shall be by direct notice. Any persons asserting an interest in or claim against the Respondent Property who have received direct notice of the forfeiture action must file a Verified Claim with the Clerk of the United States District Court, 511

E. San Antonio, El Paso, Texas 79901, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, **thirty-five (35)** days after the notice was received and an Answer within **twenty-one (21)** days thereafter. Copies of the Verified Claim and Answer must be served upon Assistant United States Attorney David R. Rosado, 700 E. San Antonio, Suite 200, El Paso, Texas 79901, or default and forfeiture will be ordered. *See* 18 U.S.C. § 983(a)(4)(A) and Rule G(5) of the Supplemental Rules of Admiralty or Maritime Claim and Asset Forfeiture Actions;

3. That Warrant of Arrest *in rem* issue to the Department of Homeland Security, Immigration and Customs Enforcement or any other authorized law enforcement officer or any other person or organization authorized by law to enforce the warrant, commanding the arrest of the Respondent Property;

4. That the Department of Homeland Security, Immigration and Customs Enforcement be granted the authority by the Court, upon arrest of the Respondent Property, to designate any other authorized law enforcement agency or any other authorized person or organization to act as substitute custodian of the Respondent Property;

5. That Judgment of Forfeiture be decreed against the Respondent Property;

6. That upon Final Decree of Forfeiture, the Department of Homeland Security, Immigration and Customs Enforcement shall dispose of the Respondent Property in accordance with law; and

7. For costs and for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

                                            Respectfully submitted,

                                            JOHN E. MURPHY
                                            United States Attorney

By: _____
            David R. Rosado
            Assistant United States Attorney
            700 E. San Antonio, Suite 200
            El Paso, Texas
            (915) 534-6884
            (915) 534-3461
            Texas Bar No. 17242000

## VERIFICATION

STATE OF TEXAS        )
                      )
COUNTY OF EL PASO )

Special Agent, Gustavo Correa declares and says that:

1. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, in the El Paso, Texas, and am the investigator responsible for the accuracy of the information provided in this litigation;

2. I have read the above Verified Complaint for Forfeiture and know the contents thereof; that the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and based on information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 29 day of April, 2010.

Gustavo Correa -Special Agent
Immigration and Customs Enforcement

Subscribed and sworn to before me on this the 29 day of April, 2010.



Notary Public in and for the State of Texas

My Commission Expires: 6-20-2012